UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: Application of IKB DEUTSCHE )
INDUSTRIEBANK AG for an Order to ) Case No. 09-cv-7852
Conduct Discovery for Use in a Foreign )
Legal Proceeding Pursuant to 28 U.S.C ) Judge John W. Darrah
§ 1782 )

## MEMORANDUM OPINION AND ORDER

This motion arises from pending litigation in the United Kingdom (the "U.K. Litigation"). In that case, Calyon Credit Agricole CIB ("Calyon") filed suit against IKB Deutsche Industriebank AG ("IKB"), seeking damages allegedly incurred in connection with a financial transaction known as "Havenrock II." On December 22, 2009, this Court granted IKB's *ex parte* application for discovery in aid of foreign litigation pursuant to 28 U.S.C. § 1782. On December 23, 2009, IKB served a third-party subpoena upon Magnetar Capital LLC ("Magnetar"), seeking documents and deposition testimony. On January 15, 2010, Magnetar filed a motion requesting this Court to vacate its prior order, quash IKB's subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), and impose an appropriate sanction. For the following reasons, Magnetar's motion is denied.

## BACKGROUND

The foreign litigation which led to IKB's *ex parte* discovery application is *Calyon v. IKB Deutsche Industriebank Aktiengesellschaft*[1]. This litigation arose out of the participation of Calyon, a French bank, and IKB, a German bank, in Havenrock II. Calyon claims it incurred over $1.5 billion in damages when it honored contractual commitments arising under a "Put

---

[1] *Calyon v. IKB Deutsche Industriebank Aktiengesellschaft*, 2009 Folio Nos. 926, 1031, pending in the High Court of Justice, Queen's Bench Division, Commercial Court, United Kingdom.

1

Option Agreement" that IKB fraudulently induced Calyon to execute in connection with Havenrock II. Calyon alleges a cause of action for breach of contract, deceit, and negligent misrepresentation. Calyon contends that, among other things: (1) Calyon was fraudulently induced into participating in the Havenrock II transaction based on misrepresentations about IKB's financial statements; (2) IKB failed to negotiate the Havenrock II transaction in good faith; and (3) IKB failed to inform Calyon of deficient risk management and reporting structures as to the portfolio of investments associated with the "Rhineland Programme," a program IKB launched in 2002 to facilitate investments in structured investment products.

IKB filed its Defense to Calyon's claims on November 30, 2009, which attacks Calyon's causation theory by stressing that Calyon knowingly assumed various risks in executing the Put Option Agreement. IKB seeks to establish in the U.K. Litigation that Calyon was or should have been intimately familiar with the structure and risks of the particular collateralized debt obligations ("CDOs") "put" to Calyon, as well as the risks associated with the Rhineland Programme in general. By virtue of Magnetar's participation in the CDOs at issue, IKB contends Magnetar possesses information establishing Calyon's awareness of the risks of those CDOs.

The third-party subpoena required document production by January 15, 2010, and Rule 30(b)(6) depositions by February 15, 2010. IKB's request sought information from Magnetar relating to Calyon's market ambitions, Calyon's assessment of the assets acquired in connection with the CDOs Calyon arranged and marketed to IKB, and Calyon's practices in structuring and marketing those deals.

On January 6, 2010, Magnetar requested by letter that IKB withdraw its subpoena. On January 8, 2010, IKB replied that it would not withdraw the subpoena but was willing to make

reasonable accommodations. In its motion to vacate, Magnetar contends that IKB's subpoena is unduly burdensome and intrusive and a mere attempt to circumvent English disclosure procedures.

## LEGAL STANDARD

The determination of whether discovery is appropriate under 28 U.S.C. § 1782 is discretionary and involves consideration of multiple factors. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (*Intel*). Initially, an applicant must satisfy three threshold requirements before a court can compel discovery under Section 1782: (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for the use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person. *Id.* at 264.

## ANALYSIS

As set out in this Court's previous order on December 18, 2009, IKB has satisfied the statutory elements of Section 1782 and this Court has jurisdiction to order the relief requested. Under the circumstances of the present case, the U.K. Litigation qualifies as "a foreign or international tribunal" for purposes of Section 1782. *Id.* at 257-58. As Defendant, IKB qualifies as an "interested person." Thus, this Court has the authority to order Magnetar, located within this district, to produce the requested documents and testimony. However, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id.* at 164.

The Supreme Court has identified several non-exclusive factors that a district court may consider in deciding whether to grant an application under Section 1782: (1) whether "the person from whom the discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request should be scaled back to avoid undue burden. *Id.* at 264-65.

While not disputing that IKB meets all of Section 1782's statutory requirements, Magnetar maintains that IKB's discovery request should be denied. Specifically, Magnetar asserts that: (1) IKB's subpoena is an attempt to circumvent English disclosure procedures; and (2) IKB's subpoena is unduly burdensome and intrusive. Alternatively, Magnetar argues that even if this Court concludes that IKB's application for discovery is proper under Section 1782, IKB's unduly burdensome and extremely premature third-party subpoena should be quashed pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv).

IKB's application for discovery is appropriate considering the above-stated factors. First, IKB's discovery request has not been shown to be an attempt to circumvent English discovery procedures. Second, the discovery requested is not unduly burdensome and intrusive under Section 1782.

4

## *Whether or Not the Discovery Requested Is Not an Attempt to Circumvent English Discovery Procedures*

This factor requires consideration of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Magnetar contends that because an English court would not allow IKB's premature discovery demands from a nonparty such as Magnetar, IKB's application is an attempt to circumvent English discovery procedures.

The analysis of this factor also requires consideration of Magnetar's non-party status in the foreign proceeding, which makes it more difficult for the English court to reach Magnetar directly. To assist foreign courts, American courts generally grant applications seeking discovery from nonparties for use in the foreign proceeding. *See In re Microsoft Corp.*, 2006 WL 1344091, *3-5 (D. Mass. 2006) (recognizing that nonparties to a foreign proceeding, especially nonparties that are not found in the jurisdiction of the foreign proceeding, are often difficult for those proceedings to reach directly).

The Supreme Court in *Intel* found that Section 1782 does not impose an exhaustion requirement. Further, courts within the Seventh Circuit have "refused to graft a quasi-exhaustion requirement onto § 1782 that would force litigants to seek information through the foreign and international tribunal before requesting discovery from the district court." *In re Fleischmann*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) (*Fleischmann*) (internal quotations omitted); *accord In re Kulzer*, 2009 WL 961229, at *5 (N.D. Ind. Apr. 8, 2009). Similarly, Section 1782 allows for discovery even when a foreign litigation is in a nascent stage. The Supreme Court in *Intel* rejected the contention that 1782 discovery should be unavailable because an applicant's foreign action "had not progressed beyond the investigative stage," i.e., Section 1782 discovery

may be pursued so long as a ruling by a foreign tribunal was "within reasonable contemplation." *Intel*, 542 U.S. at 259-60. Decisions following *Intel* have rejected the contention that discovery cannot proceed because litigation is still in a preliminary stage. *E.g., In re Application of Wilson & Partners, Ltd.*, 2007 WL 2221438, at *3 (D. Colo. July 27, 2007) (*Wilson*) ("Respondents argue that the foreign proceedings are in their infancy and have not yet reached the discovery stage, this is irrelevant to this Court's consideration, because the statute only requires that the appropriate proceedings be within reasonable contemplation.") (internal quotations omitted).

Although the *Intel* Court held that Section 1782 does not embody a foreign discoverability requirement, i.e., the Court declined to impose a rule precluding Section 1782 discovery in instances where an applicant would be unable to obtain the requested discovery in the relevant foreign jurisdiction, a district court may consider foreign discoverability in deciding whether to exercise its discretion in favor of allowing the requested discovery. Here, allowing IKB to obtain the discovery requested is consistent with English policy (Magnetar Capital LLC's Memorandum of Law in Support of Its Motion ("Magnetar Br.") at 11-12; Exh. 3 (Declaration of Conrad Walker dated February 10, 2010 at 3-7)). But even if the evidence sought were not discoverable in the forum country, that alone does not preclude granting a Section 1782 application. *In re Application of Proctor & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wisc. 2004) (citation omitted) ("to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

Magnetar has neither identified any United States policy that would be offended by allowing this discovery to proceed, nor has it shown that the English court would be unreceptive to materials discovered under Section 1782(a). District courts routinely allow applicants to

6

obtain third-party Section 1782 discovery related to litigation pending in the United Kingdom. *Wilson*, 2007 WL 2221438, at * 4-5 (allowing Section 1782 depositions of third-parties in connection with United Kingdom litigation); *In re Application of Guy*, 2004 WL 1857580, at *2-3 (allowing Section 1782 document discovery and depositions as to third-parties in connection with United Kingdom litigation). Therefore, it cannot be said that the Application is an attempt to circumvent English proof-gathering restrictions. This factor supports granting the discovery requested[2].

*Whether the Discovery Requested Is Unduly Burdensome Under § 1782*

This factor requires an examination of the breadth of the discovery requests themselves. *Intel*, 542 U.S. at 265. ("[U]nduly intrusive or burdensome requests may be rejected or trimmed"). If a court orders discovery, then the Federal Rules of Civil Procedure may govern discovery; so a court may use Rule 26 and other rules to protect against specific requests that are unduly intrusive or burdensome. This factor directs the court to look at the requests in the aggregate to decide whether they are unduly intrusive or burdensome.

Labeling the subpoena as a "fishing expedition," Magnetar argues that pursuit of the documents and deposition testimony cannot be justified. By characterizing its relationship with Calyon as "limited," Magnetar contends to have "nothing whatsoever" to do with the underlying U.K. Litigation. (Magnetar Br. at 11, 14). As such, Magnetar contends it was neither a central party to the creation of the CDO assets, nor did it work hand-in-hand with Calyon in bringing these deals to market. In that the information sought has minimal relevance, Magnetar argues that the broad document requests compounded with the equally expansive topics for deposition testimony subject Magnetar to an undue burden. To support this contention, Magnetar submitted

---

[2] Calyon made its own Section 1782 application seeking discovery in the U.S. a month prior to IKB's application for discovery from Magnetar.

7

the affidavit of Russell Daugerdas, a compliance officer familiar with its storage and retention of electronic documents. (Affidavit of Russell Daugerdas dated January 15, 2010 ("Daugerdas Aff.")). Daugerdas's affidavit explains what would be involved in retrieving the old files IKB requested. It is estimated that a production of the type called for by IKB's subpoena would cost Magnetar a minimum of hundreds of thousands of dollars. (Daugerdas Aff. at 9).

To counter, IKB argues that Magnetar disregards the facts described in its Section 1782 application that demonstrate the connection between Magnetar and the U.K. Litigation and Magnetar's role regarding the CDOs. IKB contends that Magnetar was an instrumental participant in marketing the CDOs. Many of those CDO assets thereafter became subject to Calyon's obligations under the Put Option Agreement, the contract executed in connection with Havenrock II. Calyon, in the U.K. Litigation, claims to have been fraudulently induced to execute the Put Option Agreement and challenges IKB's risk management and reporting structures. The close relationship between Magnetar and Calyon in bringing these CDOs to market is clearly relevant, for purposes of discovery, to IKB's defense that Calyon knew or should have known the risks associated with the Put Option Agreement[3].

Generally, the federal rules allow for broad discovery so parties may gain full knowledge of the issue of the case. *Hickman v. Taylor*, 329 U.S. 495 (1947). Under Section 1782, discovery is as broad as that under Rule 26(b). *Fleischmann*, 466 F. Supp. at 1029. Under Rule 26(b), discovery is allowed regarding "any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Thus, the principal requirement is that the information requested be relevant to the subject of the pending case. Federal Rule of Evidence Rule 401

---

[3] IKB alleges the Calyon-guaranteed CDOs include $312.5 million of CDOs Calyon itself arranged and sold into the Rhineland Programme; Magnetar was the equity tranche investor of at least $130 million (face value) of those same CDOs.

8

states, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In general, relevancy should be liberally construed. *See Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978). If there is a possibility that the discovery sought may lead to information relevant to the subject matter of the action, then the discovery should generally be allowed. Fed. R. Civ. P. 26(b)(1); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 544 (N.D. Ind. 1991). Thus, the Court should be permissive in determining the relevancy of the discovery requests to the pleadings. *Elm Energy & Recycling (U.K.) Ltd. v. Basic*, 1996 WL 596456, at *11 (N.D. Ill. Oct. 9, 1996) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another [jurisdiction] should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.") (internal quotations omitted).

The discovery requested is relevant to its defense in the U.K. Litigation. Accordingly, the discovery sought by IKB is likely to lead to evidence regarding the extent of Calyon's awareness of information suggesting that the collateral underlying those CDOs was riskier than the general market appreciated.

However, a finding of relevance does not automatically mean that discovery is proper. "While discovery is often broad, the Federal Rules of Civil Procedure authorize district courts to protect targets of discovery from annoyance, embarrassment, oppression, or undue burden or expense." *Stagman v. Ryan*, 176 F.3d 986, 993 (7th Cir. 1999), (quoting Fed. R. Civ. P. 26(c)); *Sullivan v. Conway*, 1995 WL 573421, *1 (N.D. Ill. 1995) (recognizing that the policy of broad discovery is counterbalanced by the ability to limit discovery requests that impose undue burden or expense). Furthermore, a court may limit discovery if it determines that the burden of the

discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(iii) – *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571 (N.D. Ill. 2004). To make such a determination, courts consider what has been dubbed the proportionality test of Rule 26(b)(2)(iii); the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Id.* In this way, parties are protected from unduly burdensome or expensive discovery requests. *Id.*

After considering the foregoing factors, IKB's discovery request does not pose an undue burden. Notwithstanding Magnetar's "limited business relationship" with Calyon, IKB seeks information limited to CDOs involving both Magnetar and Calyon during an eighteen-month period. While compliance with any discovery request imposes some burden, Magnetar only supports its contention that IKB's subpoena imposes an undue burden with a recitation of the entire data storage system at Magnetar and a description of the process that *might* be involved if it were required to search every single repository of information it maintains. This conclusory estimate fails to sufficiently identify the basis for Magnetar's objection or connect a dollar amount to the particular tasks that would be necessary to provide the requested information. This Court is effectively prevented from making a meaningful determination as to whether the financial cost is unreasonable.

Therefore, it has not been demonstrated that the information sought by IKB presents an undue burden. This is particularly so, considering IKB's willingness to narrow its requests; IKB represented it was amendable to making reasonable accommodations. Therefore, Defendant's subpoena production shall be generally limited to information related to Magnetar's activities with Calyon in connection to the CDOs in suit.

## CONCLUSION

Magnetar's Motion to Vacate Defendant's subpoena and impose sanctions is denied, provided, however, the subpoena shall be limited to Magnetar's relation with Calyon during an eighteen-month period relating to CDOs involved in the U.K. Litigation. In accordance with IKB's offer to so narrow its requests, IKB's subpoena is modified accordingly.

Date: April 8, 2010

JOHN W. DARRAH
United States District Court Judge